UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| BRYAN SEVEGNY, | : |
|        Plaintiff, | : |
| v. | :    C.A. No. 23-cv-203-JJM-PAS |
| CHRISTINE ROBINSON, VANESSA LISI and ASSISTANT DIRECTOR, | : |
|        Defendants. | : |

### REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Plaintiff Bryan Sevegny, a prisoner in custody of the Rhode Island Department of Corrections ("RIDOC"), has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 against three RIDOC officials. Read with the leniency due to any *pro se* filing, Instituto de Educacion Universal Corp. v. United States Dep't of Educ., 209 F.3d 18, 23 (1st Cir. 2000), Plaintiff's 161-page[1] pleading alleges that, during pretrial detention beginning in August 2021, and continuing past sentencing on December 12, 2022, to the present, he has been confined in "solitary confinement" despite his diagnosis of an unspecified "severe and persistent mental illness" ("SPMI"). His pleading states:

- "I am on the brink of ABSOLUTE INSANITY!!!" ECF No. 1 ¶ 95.

- "Everyday I am being pushed further & further from REALITY by RIBCO[2] – how long until I insanely murder someone?" Id. ¶ 185.

---

[1] Plaintiff's hand-written complaint is seventy-five pages long; he has attached as exhibits eighty-six more pages. I have reviewed all of this material and have collectively treated it as the operative pleading under review pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.

[2] Plaintiff's complaint contains many references to the Rhode Island Brotherhood of Correctional Officers, which he identifies as "RIBCO." There are no claims against RIBCO. I have interpreted references to RIBCO as references to RIDOC.

- "Without this court permitting me to [seek redress], I will CONTINUE to SUFFER (LITERALLY) IRREPARABLE PSYCHOLOGICAL & PHYISIOLOGICAL INJURY!  AND: I will also CONTINUE to perpetuate within the RECIDIVISM route I am trapped within, My life AND SANITY is in your Hands."  Id. ¶ 192.

Plaintiff describes his confinement as in-cell for twenty-three hours a day with single recreation status for one hour a day and a shower five times a week.  Id. ¶¶ 14, 16.

Based on these factual allegations, Plaintiff asserts two claims: that RIDOC never afforded him a classification hearing before the Classification Board created by R.I. Gen. Laws §§ 42-56-30 to 32 and never developed an individualized program of rehabilitation for him as referenced in R.I. Gen. Laws § 42-56-29.  ECF No. 1 ¶¶ 30-36.  Consistent with the limited nature of his claims, Plaintiff has sued Defendants Christine Robinson, alleged to be in charge of RIDOC classification, and Vanessa Lisi, alleged to be employed in RIDOC's classification branch.  Id. ¶¶ 6-7.  He also sues an unnamed Defendant, identified as the "Assistant Director" who is responsible for overseeing classification.  Id. ¶ 8.  All are sued in their individual and official capacities.  Plaintiff alleges that these three RIDOC officials have transgressed a federally recognized liberty interest arising from RIDOC's state law obligations to have a receiving and orientation unit that develops a rehabilitation/treatment program for each prisoner, pursuant to R.I. Gen. Laws § 42-56-29, and to maintain a classification board and unit pursuant to R.I. Gen. Laws §§ 42-56-30 to 32.  ECF No. 1 ¶¶ 194-99.  He also claims that they have violated his state-law right not to be subjected to disability discrimination pursuant to R.I. Gen. Laws § 42-87-2.  ECF No. 1 ¶ 195.  He seeks declaratory and injunctive relief, as well as modest compensatory and punitive damages.  Id. ¶¶ 201-209.

Plaintiff accompanied his complaint with a request to proceed *in forma pauperis* ("IFP"), ECF No. 2. The IFP motion has been referred to me. On its face, the IFP motion establishes that Plaintiff is likely financially eligible, although he did not include a copy of his inmate account statement as required by 28 U.S.C. § 1915(a)(2).[3] Based on this referral, I am required to screen his complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A. Under the Prison Litigation Reform Act ("PLRA"), I am also obliged to recommend denial of the IFP motion based on Plaintiff's status as a "three-striker,"[4] unless his claim falls into the PLRA's exception to the three-strikes rule ("the prisoner is under imminent danger of serious physical injury"). 28 U.S.C. 1915(g).

**I.     Background**

    A.    <u>Plaintiff's Prior Claims of Excessive Use of Restrictive Housing</u>

A prolific litigant, Plaintiff has previously brought cases that challenged restrictive conditions of confinement imposed on him while in RIDOC's custody despite his SPMI diagnosis. To take some more recent examples, in 2017, Plaintiff alleged that he attacked a correctional officer (who he kicked in the groin), following which he was administratively classified to be held in high security; this case was dismissed by Text Order on November 6,

---

[3] Attached to the pleading as part of Exhibit I are two letters, which indicate that Plaintiff had previously asked for a copy of his inmate account statement to comply with this requirement and that he had requested the statement two more times, after his first effort was not successful. ECF No. 1-11 at 4-5. It is clear to the Court that Plaintiff is proceeding in good faith in his effort to comply. As soon as the account statement is received, if the IFP motion has not been denied for other reasons and the case is still pending, the Court will assess Plaintiff's IFP eligibility and, if he is eligible, set his initial payment as required by applicable law. Until it is received, however, the Court reserves making the determination whether Plaintiff is financially eligible for IFP status.

[4] <u>Sevegny v. Rhode Island Dep't of Corr.</u>, C.A. No. 22-271WES, 2022 WL 4235152, at *5 (D.R.I. Sept. 14, 2022) (following notice in show cause order, Court finds Plaintiff is three-striker), <u>appeal dismissed</u>, No. 22-1722, 2022 WL 19569463 (1st Cir. Nov. 8, 2022), <u>adopted by Text Order</u> (D.R.I. Dec 14, 2022). The three-strikes rule prevents a prisoner from bringing a civil suit IFP if he has filed three or more prior suits that were "dismissed on the grounds that [they were] frivolous, malicious, or fail[ed] to state a claim upon which relief may be granted." <u>Sevegny v. Coyne-Fague</u>, C.A. No. 21-471-JJM-PAS, 2021 WL 6048973, at *3 (D.R.I. Dec. 21, 2021) (internal quotation marks omitted), <u>adopted by Text Order</u> (D.R.I. Jan. 13, 2022).

2017.  Sevegny v. R.I. Brotherhood of Corr. Officers, 17-cv-261JJM.  In 2020, Plaintiff filed a series of cases complaining of conditions of confinement at Eleanor Slater Hospital, where he was placed for mental health treatment while in RIDOC's custody, including that he was placed on unit restriction and that RIDOC had failed to prepare an individualized treatment or rehabilitation plan.  Sevegny v. Eleanor Slater Hospital, 20-cv-102MSM; 20-cv-173MSM; 20-cv-174MSM.  These were all dismissed in 2020.

In 2021, Plaintiff filed two cases, both captioned Sevegny v. Coyne-Fague, 21-cv-471JJM and 21-cv-492JJM; each is based on the claim that Plaintiff had been disciplined with one year each (a total of 730 days) in solitary confinement due to an incident in August 2021 when he attempted brutally to murder one correctional officer and assaulted another.  See Sevegny, 2021 WL 6048973, at *1-2.  As Plaintiff himself described the incident in the 2021 pleading, he had just returned to RIDOC's custody from California and was undergoing a mental health assessment with three female workers and a correctional officer.  Sevegny, 21-cv-471-JJM-PAS, ECF No. 1 ¶¶ 6-14.  Plaintiff attacked ("began to pulverize") the correctional officer, tried to kill him ("attempting to break his neck") and spit on another correctional officer, saying he would "slice him."  Id. ¶¶ 15-21.  One of the 2021 pleadings alleged that 730 days in disciplinary confinement in these circumstances contravened a Superior Court holding that his mental health precludes placement in extended solitary confinement, as well as that this sanction violated the Eighth and Fourteenth Amendments because it failed to conform to the so-called Morris Rules.  Sevegny, 2021 WL 6048973, at *1-2.

In dismissing the first of these two cases, the Court noted the plausibility problem inherent in a claim of placement in restrictive confinement (limiting contact with other people) based on the claimant's having committed an "extremely serious act[]" of violence directed

towards another person.  Sevegny, 2021 WL 6048973, at *2.  Nevertheless, citing Diaz v. Wall, C.A. No. 17-94 WES, 2018 WL 1224457, at *7 (D.R.I. Mar. 8, 2018), the Court also found that, as an individual with mental illness, "Plaintiff may well have a plausible claim under the Eighth/Fourteenth Amendments based on the length of disciplinary confinement that was imposed," but that "the remedies as presently sought by his pleading are not plausible." Sevegny, 2021 WL 6048973, at *4.  Plaintiff was offered the opportunity to amend, including to add to his pleading enough to overcome the risk that he could be found to be a three-striker ineligible for IFP status.  Id.  Plaintiff failed to file anything.  In 2021 both cases were dismissed. Sevegny, 21-cv-471, Text Order Mar. 24, 2022; Sevegny, 21-cv-492-JJM, ECF No. 4.

    B.    The Current Complaint[5]

In the current case, Plaintiff begins by relying on essentially the same facts that were the basis for the claims dismissed in 2021 in Sevegny, 2021 WL 6048973, at *4.  That is, his focus is on the discipline imposed for the August 2021 incident, after which he claims he was placed in "solitary confinement" in "HSC," "with no MENTAL HEALTH TREATMENT."  See ECF No. 1 ¶¶ 11, 13, 21.  He now alleges he remained in that status until he was sentenced on December 12, 2022.  ECF No. 1 ¶¶ 9-22.  He asserts that Defendants Robinson and Lisi never afforded him a classification hearing before the Classification Board created pursuant to R.I. Gen. Laws §§ 42-56-30 to 32 and never gathered information to develop an individualized program of rehabilitation for him as referenced in R.I. Gen. Laws § 42-56-29.  Id. ¶¶ 30-32, 34, 39-43, 54,

---

[5] In the current complaint, in addition to his claims of improper classification and the lack of a treatment plan analyzed in the text, which resulted in allegedly excessive restriction despite an SPMI diagnosis, Plaintiff also alleges that the three named Defendants should be held responsible for RIDOC's failure in one instance to allow him to make a copy of a complaint he had written against another inmate, ECF No. 1 ¶ 178, as well as for RIDOC's wrongful denial of access to two books that he had ordered, although he concedes that he is allowed to receive many other books on a wide array of topics, including Dante's Divine Comedy.  Id. ¶¶ 172-74 & Ex. G (ECF No. 1-9). Without more, these facts do not come close to plausibly stating a § 1983 claim for a constitutional violation against any of the three Defendants.  I recommend that they be summarily dismissed.

5

129. He further pleads that he "never went outsid[e]" for the first year of this phase of incarceration, as well as that he eventually began to go outside. Id. ¶¶ 19-20.

In the current iteration of this claim, Plaintiff's narrative continues into the more recent period. Thus, he was sentenced by the Superior Court to serve five years in December 2022 due to the August 2021 incident, id. ¶ 15, and, in January 2023, was "classified" by Defendant Robinson as "long-term solitary confinement" and was placed in a unit staffed by the correctional officer who was the "victim" of the case Plaintiff "was classified on." Id. ¶¶ 51, 143. Soon after, in February 2023, Plaintiff alleges that he attacked another correctional officer by "IMMEDIATELY" spitting in his face; this officer (according to Plaintiff) retaliated by punching him. Id. ¶¶ 145-48. The incident resulted in new criminal charges against Plaintiff and another year-long term in solitary confinement; Plaintiff was told that the correctional officer would also be held responsible for his conduct. Id. ¶¶ 151-52. In March 2023, Plaintiff alleges that he "slipped" out of his handcuffs and viciously attacked another prisoner during recreation ("busting his face open (he needed stitches)"), as well as that he threw urine on and "headbutted" a correctional officer. Id. ¶¶ 158-63. Based on these actions, he alleges that he was returned to "single recreation" status. Id. ¶ 161. In April 2023, he was classified as "long-term solitary confinement . . . in . . . HSC" by Defendant Lisi, despite the opinion of his treating psychiatrist that his SPMI is exacerbated by long-term solitary confinement. Id. ¶¶ 37-44 (capitals omitted). Also in April 2023, he was disciplined for writing sexually predatory letters and sending sexually explicit material to two female RIDOC employees (a social worker and a deputy warden).[6] Id. ¶¶ 58-62, 165-70; see also id., Ex. A (ECF No. 1-3); Ex. F (ECF No. 1-8).

---

[6] Plaintiff's pleading and exhibits reveal that he defended this admitted sexual conduct directed at RIDOC female staff by claiming "I . . . am grieving for a resolution as to 'causation' . . . . Have I lost touch with 'reality' ???" ECF No. 1, Ex. A (ECF No. 1-3 at 19) (capitals omitted); see also id. (ECF No. 1-3 at 18). Plaintiff's pleading and

Regarding mental health treatment, Plaintiff's pleading is clear that he does not dispute that, for the period preceding his current incarceration, he was placed at Eleanor Slater Hospital due to his mental health. See Sevegny v. Eleanor Slater Hosp., No. 1:19-cv-00653-MSM-LDA, 2020 WL 6533643, at *1 (D.R.I. Nov. 5, 2020) (while imprisoned in RIDOC's custody, transferred to hospital due to mental health condition). Contradicting Plaintiff's allegation of "no MENTAL HEALTH TREATMENT" in the current period, ECF No. 1 ¶ 21, Plaintiff alleges that from August 2021, through December 12, 2022, he had been "directly" under the care of RIDOC's chief psychiatrist, Dr. Christopher Matkovich. ECF No. 1 ¶¶ 55-57. Further, Plaintiff's exhibits to the current complaint establish that RIDOC tried to perform a mental health screening immediately following Plaintiff's reincarceration at RIDOC in August 2021. ECF No. 1, Ex. A (ECF No. 1-3 at 6-7). It was not completed because of the incident at the core of this case, when Plaintiff attacked the correctional officer supervising the assessment by punching him, knocking him out, tossing him on the ground and putting him in a headlock, and terrorizing the social worker. Id., Ex A (ECF No. 1-3 at 6-8). Following that incident, as described by Plaintiff, his planned release into the community was canceled and he was placed in "solitary confinement." Id., Ex A (ECF No. 1-3 at 9). Plaintiff also notes in passing that he had to stop treatment with another RIDOC mental health worker because he "assaulted her because I did not like how she responded verbally & physically with INTIMIDATION when I commented about her UNION." Id., Ex A (ECF No. 1-3 at 13-14.) Thus, Plaintiff's pleading establishes that RIDOC has provided and attempted to provide mental health treatment and that its efforts were

---

exhibits reflect that RIDOC considered Plaintiff's defense that "I MAY HAVE LOST TOUCH WITH REALITY," ECF No. 1 ¶ 166, and forwarded Plaintiff's statement to "Behavioral Health." ECF No. 1, Ex. F (ECF No. 1-8 at 6).

complicated by these disturbing (as described in Plaintiff's words) events.  See e.g., ECF No. 1 ¶ 166.

The exhibits that Plaintiff has attached to his pleading reflect explanations RIDOC provided to Plaintiff for the level of restriction imposed on him.  For example, in March 2023, RIDOC responded to Plaintiff's grievance with the explanation that:

> Through your recent assaultive actions and your threatening correspondence to my office and Captain Adams you were placed on a special management status.  This status will be reviewed and adjusted accordingly based on your behaviors.  Although you may not agree with the precautions it is for the safety of the correctional staff and you that these precautions be implemented.

Id., Ex. A (ECF No. 1-3 at 25-26).  In April 2023, in response to Plaintiff's defense to the charge of sending amorous and sexual material to female RIDOC workers that he might have "lost touch with reality," ECF No. 1 ¶ 166 (capitals omitted), RIDOC wrote:

> Due to your assaultive behavior towards inmates and staff your housing assignment was determined for the safety of Correctional Staff, Non-uniformed staff members and the inmate population.  You admit in grievance # 2023-0243 that you are envisioning things that are not real yet still making assertions that staff are objectifying you. . . . The amorous letters you sent to CSW [NAME] and Deputy Warden [NAME] on 4/10/23 were not acceptable, and grossly inappropriate.  Based on this review, your grievances will be forwarded to Behavioral Health and the Office of Inspections.

Id., Ex. A (ECF No. 1-8 at 6) (redactions added).

Plaintiff's complaint confirms that his threats of violence against RIDOC staff and other inmates continue to the present.  For example, Plaintiff's pleading includes the menacing threat: "I am being pushed further & further from REALITY . . . how long until I insanely murder someone?"  Id. ¶ 185; see id. ¶ 17 ("other peoples safety (both prisoners & member of RIBCO) are in physical threat of attack by me in Response to the environmental conditions of prison life").

8

C.  Other Ongoing Litigation Addressing Restrictive Confinement

Several of Plaintiff's potential federal law constitutional/statutory claims[7] – specifically, the claims that RIDOC has violated the Eighth and Fourteenth Amendments, the ADA and § 504 through the excessive use of unreasonably restrictive disciplinary confinement intentionally imposed on an individual known to suffer from SPMI to punish rather than treat his symptoms – are already asserted in several other cases pending before this Court. In three of these cases, the Court has appointed attorneys; in two of them, the Court has appointed Rule 706 experts paid for by RIDOC. Morris v. Travisono, 69-cv-4192-JJM ("Morris"); Paiva v. Rhode Island Dep't of Corr., 17-mc-14JJM ("Paiva") (collectively "Morris/Paiva"); Diaz v. Wall, 17-cv-94-JJM ("Diaz"); Liberty v. Rhode Island Dep't of Corr., 19-cv-573-JJM-PAS. One of these cases (Morris) is an already-certified class action in which Plaintiff is a member of the class. Morris is focused on RIDOC's procedures for classification and placement in restrictive housing, including its consideration of mental health in making these determinations; thus, Morris appears to address the concerns that Plaintiff seeks to raise in this case, except that it seeks solely forward-looking remedies, not money damages. See Liberty v. Rhode Island Dep't of Corr., C.A. No. 19-cv-573-JJM-PAS, 2022 WL 18024627, at *2 (D.R.I. Dec. 30, 2022).

II. **Applicable Law and Analysis**

A.  Screening of Complaint

For screening purposes, the Court must consider whether Plaintiff has filed a pleading that is sufficient to state a plausible claim against the named defendants of conditions of

---

[7] Read with appropriate liberality, Plaintiff's state law claim of a violation by the named Defendants of R.I. Gen. Laws § 42-87-2 may be recast as alleging a federal law claim arising under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., ("ADA"), and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Mindful of his *pro se* status, I have analyzed Plaintiff's pleading to determine whether it states a plausible ADA or § 504 claim.

9

confinement that transgress the applicable law that he cites. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2) and § 1915A is identical to the standard used when ruling on a Rule 12(b)(6) motion." Diaz v. Rhode Island, C.A. No. 21-208-JJM-PAS, 2021 WL 2000478, at *1 (D.R.I. May 19, 2021). "To state a claim on which relief may be granted, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (internal quotation marks omitted). The plausibility inquiry requires the court to distinguish "the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Silva v. Rhode Island, C.A. No. 19-568JJM, 2020 WL 5258639, at *2 (D.R.I. Sept. 1, 2020) (internal quotation marks omitted), adopted by Text Order (D.R.I. Sept. 16, 2020). After the Court has divided "the plausible sheep from the meritless goats," id. (internal quotation marks omitted), it must then determine if the factual allegations are sufficient to support "'the reasonable inference that the defendant is liable for the misconduct alleged.'" Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678).

An essential element of a viable claim under § 1983 is that the complaint must articulate a claim for relief (damages or injunctive relief) that is plausibly available from the defendants who are named. See Beltran-Ojeda v. Doe, No. CV 12-1287-PHX-DGC (MEA), 2012 WL 5363004, at *3 (D. Ariz. Oct. 31, 2012) (dismissing § 1983 complaint against an "improper defendant"). In this case, Plaintiff relies on a "liberty interest" that he alleges is derived from various state statutes dealing with inmate classification, which are codified in Chapter 56 of Title 42 of the Rhode Island General Laws (Department of Corrections). See R.I. Gen. Laws §§ 42-56-29 to 32.[8] Plaintiff has sued three RIDOC employees responsible for inmate classification.

---

[8] These statutes address prisoner classification. Section 29 establishes the "receiving and orientation unit," which is assigned the responsibility to assess an incoming prisoner's risk level and to develop a rehabilitation and treatment

He accuses them of failing to classify him from intake until after he was sentenced in December 2022, of then classifying him to be held in high security and of failing to procure an individualized rehabilitation/treatment plan. He does not allege that they were involved in any of the discipline described in the pleading; he also does not allege that any of them discriminated against him or denied him access to a program based on a disability or on his SPMI designation.

As § 1983 claims, these fail to clear the plausibility bar because the state statutes on which Plaintiff relies simply create the units within the Department of Corrections that address classification and rehabilitation or treatment planning and establish the process for the determination of classification but otherwise vest the discretion to make classification decisions in RIDOC's director. R.I. Gen. Laws §§ 42-56-29 to 32. In reliance on this discretion, the Rhode Island Supreme Court has held that these statutes do not create a prisoner-inmate constitutional liberty interest, including under the Fourteenth Amendment. DeCiantis v. Rhode Island Dep't of Corr., 840 A.2d 1090, 1092-93 (R.I. 2003) (per curiam); Bishop v. State, 667 A.2d 275, 276-79 (R.I. 1995); see Olim v. Wakinekona, 461 U.S. 238 (1983) (there is no prisoner-inmate liberty interest created when state prison director has discretion in classification of committed persons); Isler v. Grondolsky, 942 F. Supp. 2d 170, 175 (D. Mass. 2013) (when classification of inmates is within discretion of prison officials, prisoners have no constitutional right to any specific classification). Therefore, as presently stated, Plaintiff's § 1983 allegations fail to state claims that are plausible. Nor does the pleading contain any facts permitting the inference that any of the three named Defendants engaged in conduct that caused Plaintiff to be

---

program focused on the custodial management, rehabilitation and such spiritual and religious guidance as the person prefers. R.I. Gen. Laws § 42-56-29. Sections 30 through 32 create the classification board, which makes recommendations to the director of RIDOC regarding security and rehabilitation, and the classification unit, which provides information to the parole board. R.I. Gen. Laws §§ 42-56-30 to 32.

subjected to discrimination or denied him access to programming based on a disability or his SPMI classification; therefore, a potential ADA/§ 504 claim is not plausibly stated. Accordingly, I recommend that the complaint be dismissed at screening for failing to state a plausible federal question-based claim.

Regarding Plaintiff's state law claim, if the Court adopts this recommendation and dismisses Plaintiff's federal question claims, the Court lacks subject matter jurisdiction over Plaintiff's state law discrimination claim pursuant to R.I. Gen. Laws § 42-87-2, as well as any other state law claim that Plaintiff may have. See Randall v. Brosco, C.A. No. 18-69WES, 2018 WL 3133427, at *2 (D.R.I. Mar. 19, 2018), adopted, 2018 WL 3128988 (D.R.I. June 26, 2018). Federal courts are limited to exercising jurisdiction over cases that arise "under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, and over cases between citizens of different states where the amount in controversy exceeds $75,000, 28 U.S.C. § 1332(a). Once the federal question claims are dismissed, the Court's federal question subject matter jurisdiction based on 28 U.S.C. § 1331 lapses. Jurisdiction cannot be sustained based on 28 U.S.C. § 1332(a) because, as a Rhode Island prisoner, Plaintiff cannot rely on diversity of citizenship as the basis for subject matter jurisdiction; therefore, any state law claims should be dismissed for lack of subject matter jurisdiction. Sevegny, 2022 WL 4235152, at *4.

Because Plaintiff is *pro se*, these recommendations do not end the Court's work. As the First Circuit has instructed, the Court must also consider whether the facts asserted might support a viable claim and, if they do, afford the *pro se* litigant an opportunity to amend. See Brown v. Rhode Island, 511 F. App'x 4, 7 (1st Cir. 2013) (per curiam). Thus, in Sevegny, 2021 WL 6048973, the Court noted that Plaintiff might have a viable § 1983 claim arising under the Substantive Due Process Clause of the Fourteenth Amendment and the Eighth Amendment based

on the length of time (730 days) that he alleged he had been placed in disciplinary segregation for attempted murder and assault in August 2021 despite his mental illness, with the caution that, to be plausible, such a claim must address the reasonableness of RIDOC's use of close confinement to manage a serious act of violence. Id. at *2. As in Sevegny, id. at *4, I again recommend that Plaintiff be afforded thirty days to amend his federal cause of action with a new complaint that states a viable federal question claim against one or more defendants. Again, I add a caution based on Plaintiff's current pleading, which not only alleges that he has been receiving mental health treatment, but also suggests that his restrictive placement was imposed not to improperly inflict punishment based on his SPMI/disability, but rather was in direct response to his self-described repeated actions of violence (resulting in injury to correctional officers and at least one other inmate) and sexual predation. The Constitution is not transgressed when prison officials impose restraints that are reasonably calibrated to protect the physical safety of those who otherwise would be endangered by a mentally ill prisoner; nor may prison officials be held liable based on deliberate indifference to the rights of a prisoner when they impose a restraint that is reasonably necessary to avoid serious physical harm that the prisoner is likely to inflict on others. See, e.g., Silverstein v. Fed. Bureau of Prisons, 559 F. App'x 739, 762-64 (10th Cir. 2014) (placing violent prisoner (including murder) in solitary confinement for many years despite documented mental health issues did not violate Eighth Amendment); Scarver v. Litscher, 434 F.3d 972, 976 (7th Cir. 2006) ("Prison authorities must be given considerable latitude in the design of measures for controlling homicidal [individuals] without exacerbating their manias beyond what is necessary for security."); Kunze v. Bertsch, 477 F. Supp. 2d 1038, 1046-47 (D.N.D. 2007) (three years in administrative segregation did not violate Constitution where prisoner was assaultive and made threats of physical harm; "placement in administrative

13

segregation is for the safety of staff and other inmates and, as such, does not violate [plaintiff's] constitutional rights"). If Plaintiff files an amended pleading alleging a constitutional deprivation or statutory violation based on the imposition of excessively restrictive conditions of confinement, to be plausible, it should address this principle.

B.    IFP Motion and Three-Strikes Rule

Because he is an adjudicated three-striker, Sevegny, 2022 WL 4235152, at *5, Plaintiff's IFP request cannot be granted unless the Court determines that the allegations meet the exception to the three-strikes rule in that they plausibly establish that he "is in imminent danger of serious physical injury." Petaway v. Porter, C.A. No. 13-794 S, 2014 WL 4168462, at *3 (D.R.I. Aug. 20, 2014) (citing 28 U.S.C. § 1915(g)). This analysis begins and ends with the plain language of § 1915(g), which expressly limits the exception to "serious physical injury." Id. (emphasis added). While the First Circuit has not specifically addressed the issue, as confirmed by the Court's survey of the cases interpreting this phrase, § 1915(g) means what it says – that is, "[f]ear, psychological stress, and mental anguish are not physical injuries as required by the statute," Taylor v. Allen, Civil Action No. 07-0794-CG-M, 2009 WL 1758801, at *2-3 (S.D. Ala. June 16, 2009), and courts may not "unilaterally amend 28 U.S.C. § 1915(g) to include imminent mental injury as an exception to the three strikes rule," Penwell v. Wash. State Dep't of Corr., Case No. 2:21-cv-00547-DGE, 2022 WL 326784, at *2 (W.D. Wash. Feb. 3, 2022) (emphasis added). See, e.g., Uhuru v. Mancusi, No. 2:20-cv-2088 KJM KJN P, 2021 WL 4442745, at *1 (E.D. Cal. Sept. 28, 2021) (harm to mental health does not support a finding of imminent danger of serious physical injury under § 1915(g)); Smith v. Ward, C/A No. 9:13-1651-TMC, 2013 WL 5308799, at *5 (D.S.C. Sept. 18, 2013) ("[t]here is no exception to the Three Strikes Rule based upon a showing of an imminent danger of a serious psychological injury"); Cardona v. Bledsoe,

14

Civil No. 3:CV-11-0054, 2011 WL 1832777, at *5 (M.D. Pa. May 12, 2011) (same).  Read with appropriate liberality, Plaintiff's complaint contains allegations of worsening mental health but is devoid of any facts permitting the inference that Plaintiff is in imminent danger of serious physical injury.  See D'Amario v. Collins, No. CIV. 08-490-DBH, 2009 WL 2496861, at *2 (D.R.I. Aug. 13, 2009) (for "imminent danger," threat must be "real and proximate.")  Because his complaint does not fit into the exception to the three-strikes ban, I recommend that his IFP request be denied.

### III. Conclusion

I recommend that Plaintiff's IFP motion (ECF No. 2) be denied based on the three-strikes rule; I further recommend that Plaintiff be directed to pay the filing fee within thirty days of the Court's adoption of this recommendation and dismiss the case if he fails to do so.[9]  Further, having screened the pleading, I find that, as crafted, it fails to state a plausible claim over which the Court has subject matter jurisdiction.  Therefore, I also recommend that Plaintiff be afforded thirty days to file an amended pleading that states a plausible claim and that this case be dismissed if he fails to do so.  Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
August 29, 2023

---

[9] If the Court declines to adopt this recommendation, Plaintiff's IFP eligibility remains to be determined pending receipt of his inmate account statement.